# UNITED STATES DISTRICT COURT

SOUTHERN District of NEW YORK

LYNN ROWELL,

        Plaintiff(s),

- against -

GENERAL MOTORS CORP. LIFE & DISABILITY BENEFITS PROGRAM and METROPOLITAN LIFE INSURANCE COMPANY,

        Defendant(s).

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**05 CV 6600**

Judge Pauley

TO: (name and address of defendants)

GENERAL MOTORS CORP. LIFE & DISABILITY BENEFITS PROGRAM
c/o General Motors Corporation
300 Renaissance Center
MC 482-C27-B22
Detriot, MI 48265-3000

METROPOLITAN LIFE INSURANCE COMPANY
One Madison Avenue
New York, NY 10010

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY, (name and address)

BINDER & BINDER, P.C.
2805 Veterans Memorial Highway
Suite 20
Ronkonkoma, New York 11779

an answer to the complaint which is herewith served upon you, within __20__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON
CLERK

(BY) DEPUTY CLERK

JUL 21 2005
DATE


ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LYNN ROWELL,

                Plaintiff,

    – against –

GENERAL MOTORS CORP. LIFE & DISABILITY
BENEFITS PROGRAM and METROPOLITAN LIFE
INSURANCE COMPANY,

                Defendants.
------------------------------------------------------------X

**Civil Action No.:**

**COMPLAINT**

Plaintiff, Lynn Rowell, by her attorneys, BINDER & BINDER, P.C., for her Complaint against the Defendant, the General Motors Corporation Life & Disability Benefits Program (the "Program") and Metropolitan Life Insurance Company, hereby alleges as follows:

### JURISDICTION AND VENUE

1.    Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f) which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2.    Under the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA") (29 U.S.C. §§ 1001, *et seq.*), the long-term disability and life insurance plans at issue in this litigation must contain provisions for administrative or internal appeal of denial of benefits.

3.    Plaintiff has exhausted all administrative avenues of appeal and has received a final denial, and therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

4.    Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

## STANDARD OF REVIEW

5. The Supplemental Agreement Covering Life & Disability Benefits Program, *i.e.*, the Plan Document, does not contain a grant of discretionary authority to the Plan Administrator, nor does it contain such a grant to the Claims Administrator.

6. As a result, this Court must review the denial of Ms. Rowell's benefits *de novo* under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

## NATURE OF THE ACTION

7. This is a claim seeking declaration that: (i) Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee welfare benefit plan; (ii) equitable relief; and (iii) an award of attorneys' fees, costs and interest.

8. Defendant, the Program, provides long term disability benefits and life insurance coverage with a premium waiver in the event of disability, sponsored and funded by General Motors Corporation ("GM"). As Defendant, the Program, is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, ERISA applies to this action. Said benefits were effective at all times relevant hereto.

9. Upon information and belief, claims for benefits are administered through an Administrative Services Agreement (the "Agreement"), between GM and Met Life.

## THE PARTIES

10. Plaintiff was born on August 14, 1949, is presently 54 years old and is a resident of Perth Amboy, New Jersey.

11. Defendant, the Program, is an employee benefit welfare plan as defined by ERISA, and its terms and benefits are the subject matter of this action. The Program is sponsored and funded by GM.

12. The named Plan Administrator is the Investment Funds Committee of GM's Board of Directors, with an address at General Motors Corporation, 300 Renaissance Center, MC 482-C27-B22, Detroit, Michigan 48265-3000.

13. Defendant, Met Life, is the named claims administrator. Met Life is a New York insurance carrier with a home office located at One Madison Avenue, New York, New York 10010.

## STATEMENT OF FACTS

Plaintiff's Occupation:

14. Plaintiff began working for Delphi Energy & Engine Systems, a subsidiary of GM, on September 9, 1986, and she continued working there July 15, 1996, a total of almost ten (10) years with the same company.

15. Prior to, and including July 15, 1996, Plaintiff was employed by GM as an Assembler.

16. Plaintiff's occupation required her to work on an assembly line manufacturing automobile components. Plaintiff's occupation most closely resembles the occupation of a Motor Vehicle Assembler, as described in the DICTIONARY OF OCCUPATIONAL TITLES (4th Ed. 1991) (the "DOT"), DOT Listing 806.684-010, which the DOT classifies as a "medium" occupation, *i.e.*, exerting 20 to 50 pounds of force occasionally (up to 2⅔ hours in an eight-hour workday), 10 to 25 pounds of force frequently (up to 2⅔ hours in an eight-hour workday) and sitting most of the time.

17. Plaintiff's pre-disability income at the time she became disabled was approximately $17.50 per hour.

18. For the period beginning prior to July 12, 1996, Plaintiff, together with other regular employees of GM, was covered as a participant under the Defendant, Program.

The Terms of the Program:

19. The Program provides for payment of monthly income benefits to participants of the Program who become disabled.

20. The monthly benefit is determined based on a schedule set forth in the SPD, pursuant to which Plaintiff would be entitled to a monthly benefit equal to $1,680 per month, less other income benefits as those terms are identified in the Program, including Social Security disability benefits.

21.     Thus, the Program realizes a financial benefit from a claimant's receipt of Social Security disability benefits.

22.     The offset for Social Security disability and other income benefits is limited to the amount of the initial award of such a benefit and does not include any cost of living adjustments, such as that provided by Social Security.

23.     In Plaintiff's case, after the offset for Social Security disability benefits, she is entitled to a net monthly benefit of $800 per month.

24.     In the event of total disability, benefits commence after the expiration of Plaintiff's 52 weeks of Weekly Sickness & Accident Benefits, *i.e.*, July 1, 1997.

25.     The maximum benefit period under the Program is determined based upon the number of years of service at the commencement of disability. In Plaintiff's case, she was entitled to a total of 66 months of benefits.

26.     The Program contains the following Eligibility requirement:

**(a) *Eligibility***
Extended Disability Benefits coverage shall be provided while an employee is covered for Sickness and Accident Benefits.

An employee who is covered for Sickness and Accident Benefits and who, at the date of expiration of the maximum number of weeks for which <u>such employee</u> is entitled to receive Sickness and Accident Benefits and during a continuous period of disability thereafter, is totally disabled shall receive monthly Extended Disability Benefits for the period described in subsection (c) below.

For an employee to be deemed totally disabled, <u>such employee</u> must not be engaged in regular employment or occupation for remuneration or profit and be wholly prevented from engaging in regular employment or occupation with the Corporation at the plant or plants where the <u>employee</u> has seniority for remuneration or profit as a result of bodily injury or disease, either occupational or non-occupational in cause.

The SPD, p. 26.

27.     The Program also provides for continuation of basic life insurance coverage, extra accident coverage and survivor income benefit insurance during periods of disability, in accordance with the following:

**Life and Disability Coverages While You Are Disabled**
Your basic life, extra accident, and survivor income benefit insurance, as well as sickness and accident and extended disability benefit coverages, will be continued for any period during which you are:

(1) entitled to receive sickness and accident benefits while totally disabled; and
(2) totally and continuously disabled and remain on an approved disability leave of absence, but not to exceed the period equal to your years of participation under the Life and Disability Benefits Program (see page 69) as of the first day of disability.

Also, such coverages may be continued while you are entitled to receive monthly extended disability benefits, after cancellation of your disability leave because the period of the leave equaled your seniority.

The SPD, pp. 31-32.

Plaintiff's Disability:

28. Ms. Rowell sustained injuries to her back during the almost ten (10) years she worked for General Motors, due to constant lifting, bending and standing on the production line.

29. She was forced to stop working after July 12, 1996, due to the debilitating pain she was experiencing in her back, with the pain radiating down her right lower extremity.

30. An MRI taken on October 4, 1996, revealed a bulging disk at L4-L5, with an annular tear.

31. A follow up CT Scan/Myelogram confirmed the presence of right L4-L5 and L3-L4 herniated disks, causing nerve root compression.

32. Plaintiff underwent surgery on March 11, 1997, during which her treating physician performed a laminectomy, foraminotomy and microdiskectomy. The surgery was followed up with a course of physical therapy.

33. On August 14, 1998, after a full evidentiary hearing, U.S. Administrative Law Judge John M. Farley determined Plaintiff was disabled as of July 13, 1996, as defined by the Social Security Act: unable to engage in any substantial gainful activity (see, 42 U.S.C. §416(i) – Definition of "Disability" in the Social Security Act).

34. Despite the surgical intervention and continue appropriate treatment, Plaintiff's condition did not improve, and she continued to experience a worsening of symptoms. Ms. Rowell was since diagnosed with Failed Back Syndrome, *i.e.* the surgery failed to alleviate her pain.

35. In addition, Ms. Rowell has since been diagnosed as suffering from Fibromyalgia Syndrome.

36. On December 13, 2000, Ms. Rowell's medical condition had worsened to the point that the New Jersey Department of Health & Senior Services found her eligible to receive home healthcare aid:

> For your information, Mrs. Lynn Rowell, 8/14/49, has been enrolled in the Community Care Program for the Elderly and Disabled (CCPED), one of the New Jersey Model Waiver Programs which will provide a limited package of home care services. To be eligible for CCPED, an applicant must be over the age 65 or receiving Social Security Disability and meet the financial criteria established by the Department of Human Services.

37. Due to the deterioration of her condition that occurred on July 12, 1996, Ms. Rowell has been unable to return to work since that date.

38. Plaintiff has received, and continues to receive, medical treatment for her numerous medical conditions from her treating specialists.

### PLAINTIFF'S FIRST CAUSE OF ACTION FOR LONG-TERM DISABILITY BENEFITS

39. With regard to Plaintiff's claim for benefits under the Program, she continued to work through July 12, 1996.

40. Plaintiff was unable to return to work after July 12, 1996, and she advised her employer that she could no longer tolerate her multiple medical conditions and was unable to continue to work on a full-time basis. She was thereby rendered totally disabled, as defined by the Program.

41. Plaintiff continues to be so disabled.

42. Plaintiff applied for Weekly Sickness & Accident Benefits under the Program, and her claim was approved. She received Weekly Sickness & Accident Benefits for the maximum benefit period under the Program, *i.e.*, 52 weeks.

43. Plaintiff then applied for Extended Disability Benefits under the Program, and her claim was initially approved.

44. Met Life suspended Ms. Rowell's benefits on or about September 9, 1996, but upon appeal, then reversed that adverse decision by letter dated May 11, 1997.

45. Plaintiff continued to receive Extended Disability Benefits through November 30, 1998, after which her benefits were terminated without notice.

46. By Met Life's own admission, notices of the termination of her benefits dated February 17, 1999, April 7, 1999, and February 11, 2000, were sent to an incorrect address.

47. On August 21, 2000, Plaintiff contacted the Program's National Benefit Center, operated by Met Life, to inquire as to the status of her claim and why she had not received any benefits since October 31, 1998.

48. Met Life then sent Ms. Rowell a new claim form to complete.

49. Plaintiff provided additional medical documentation to Met Life on December 6, 2000, and December 29, 2000, stating that she was disabled.

50. Plaintiff retained counsel in 2001 to determine why her benefits stopped after October 31, 1998, and by letter dated April 2, 2001, Plaintiff's counsel inquired as to the status of Ms. Rowell's Extended Disability Benefits claim and requested copies of the applicable plan documents.

51. By letter dated June 5, 2001, Met Life acknowledged that several of its prior correspondence to Ms. Rowell had been sent to an incorrect address and summarized the basis for its denial of her claim, *i.e.*, "the information she provided did not reflect that she was continuously disabled, and therefore, not eligible to receive additional Extended Disability Benefits."

52. By letter dated August 15, 2001, Plaintiff's counsel requested a review of Met Life's adverse determination on this claim.

53. By letter dated September 28, 2001, Met Life agreed to consider an appeal of the denial of Ms. Rowell's claim and enclosed a copy of the SPD.

54. By letters dated April 11, 2002, and January 14, 2003, Plaintiff's counsel renewed her request for a review, but also demanded that Met Life provide a full and complete copy of the claim file as part of that review.

55. Met Life finally provided a copy of the claim file under cover letter dated January 27, 2003, and again agreed to review her appeal.

56. During a May 28, 2003, telephone conversation with Plaintiff's counsel, Met Life advised that it had changed the reason for denying her claim based upon its learning that Plaintiff's

employment with GM had terminated on October 7, 1996 – a date which coincided exactly with the expiration of Plaintiff's FMLA leave, – and thus, Met Life had determined that Ms. Rowell was never entitled to any Extended Disability Benefits.

57. Met Life made this assertion, even though Ms. Rowell continued to receive Weekly Sickness & Accident Benefits through June 31, 1997, and received Extended Disability Benefits through October 31, 1998 (although her claim had been approved through November 30, 1998).

58. Plaintiff's counsel appealed this issue by letter date May 29, 2003, pointing out that Met Life's reading of the Program Documents would result in <u>every</u> employee becoming ineligible for Extended Disability Benefits after three (3) months of Sickness & Accident Benefits. That is, Met Life was interpreting the plan documents so as to make every disabled employee ineligible for Extended Disability benefits.

59. By letter dated July 8, 2004, Plaintiff's counsel submitted additional information and comments in connection with the appeal of Met Life's adverse determination.

60. By letter dated November 8, 2004, Met Life advised Plaintiff's counsel that it was upholding its adverse decision, based upon its finding that Ms. Rowell's eligibility for Extended Disability Benefits ended when her employment was "terminated" at the end of her FMLA leave, even though she continued to receive the remainder of her Sickness & Accident Benefits and received 16 months of Extended Disability Benefits.

61. Met Life also failed to give due weight to the findings of the Social Security Administration (the "SSA") that Plaintiff was disabled, despite the facts that the SSA utilizes a significantly more stringent standard of disability and the Program gains a financial benefit from Plaintiff's receipt of Social Security disability benefits in the form of an offset.

62. Further, in denying Plaintiff's claim, Met Life and the Program totally disregarded the findings and opinions of Plaintiff's treating physicians, in favor of its own employees who never examined Plaintiff.

63. The Program and its Plan Administrator have not taken any action to correct Met Life's mishandling of Ms. Rowell's claim for benefits under the Program, nor have they taken any action to correct Met Life's completely irrational interpretation of the Program's explicit terms.

64. The Plan Administrator improperly delegated its decision-making power to Met Life, but failed in its duty to adequately monitor, and correct, the bad faith handling of this claim.

65. Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of plan participants and beneficiaries, and strictly in conformance with the provisions of the plan.

66. The Plan Administrator has failed to make any decisions concerning Plaintiff's claim for disability benefits. Rather, the long-term disability claim decisions rendered in the instant action have been made by Met Life, which upon information and belief, has a pecuniary interest in denying claims.

67. Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the plan and thereby make decisions in accordance with plan language.

68. Met Life's decisions were not supported by the medical evidence and moreover, did not apply the language of the Program. In fact, Met Life's "interpretation" of the Program documents would have the absurd result of denying eligibility for Extended Disability Benefits to all plan participants who actually become disabled.

69. Met Life's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

70. Plaintiff was and remains disabled within the terms and conditions of the Program. Plaintiff is, therefore, entitled to the receipt of monthly Extended Disability Benefits pertaining to her disability, for the period of November 1, 1998, through January 1, 2003, under the terms of the Program.

### PLAINTIFF'S SECOND CAUSE OF ACTION FOR EQUITABLE RELIEF

71. Plaintiff repeats and re-alleges the allegations contained in Paragraphs numbered "1" through "70" above, as if fully set forth herein.

72. Met Life's irrational "interpretation" of the Program documents would have the absurd and inequitable result of denying eligibility for Extended Disability Benefits to all plan participants that actually become disabled.

73. As a result, the Extended Disability Benefits provisions under the Program would be meaningless and illusory.

74. Plaintiff is entitled to equitable relief against the Program and Met Life in the form of an order precluding Defendants from interpreting the Program provisions to disallow Extended Disability Benefits to plan participants who have had their employment terminated while receiving their Weekly Sickness & Accident Benefits, and who after the termination of their employment, continue to receive the remainder of their Weekly Sickness & Accident Benefits.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. That the Court determined and then declared that under the terms of the Program that the Plaintiff's disability began on or about July 12, 1996, and that she continues to be disabled within the Program's provisions;

b. That after making such a determination, the Court grant Plaintiff appropriate legal relief and order Defendant, the Program, to compensate Plaintiff for her disability in accordance with the terms of the Program;

c. That the Court grant Plaintiff equitable relief on behalf of all plan participants in the form of an order precluding the Program and Met Life from interpreting the Program provisions to disallow Extended Disability Benefits to plan participants who have had their employment terminated while receiving their Weekly Sickness & Accident Benefits, and who after the termination of their employment, continue to receive the remainder of their Weekly Sickness & Accident Benefits;

d. That the Court award Plaintiff her attorneys' fees pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(g); and

e. That Plaintiff receive such other necessary, proper and equitable relief, including interest, costs and disbursements, as to which she may be entitled.

Dated: July 18, 2005
       Ronkonkoma, New York

BINDER & BINDER, P.C.

By: *Harry P. Binder*
Harry J. Binder (HJB 5450)
Attorneys for Plaintiff
2805 Veterans Memorial Highway
Suite 20
Ronkonkoma, New York 11779-7682
Telephone: (631) 361-6699
Facsimile: (631) 607-2569
